UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSHUA JASON CAPADONA,

        Plaintiff,

    v.

FRANK BISIGNANO, Commissioner of Social Security,

        Defendant.

Case No.  2:25-cv-0938-JDP (SS)

ORDER

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Benefits Income ("SSI") under Titles II and XVI of the Social Security Act.  Both parties now move for summary judgment.  *See* ECF Nos. 10 & 12.  For the reasons discussed below, the court denies plaintiff's motion and grants the Commissioner's motion.[1]

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct

---

[1] Both parties have consented to magistrate judge jurisdiction.  ECF No. 8.

1

legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

On August 25, 2022, plaintiff filed applications for a period of disability, DIB, and SSI, alleging disability beginning September 1, 2020. Administrative Record ("AR") 220-35, 239-43. After his applications were denied both initially and upon reconsideration, plaintiff testified at a hearing before an ALJ. AR 32-64, 119-24, 132-46. On May 22, 2024, the ALJ issued a decision, finding that plaintiff was not disabled. AR 15-26. Specifically, the ALJ found that:

2

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

2. The claimant has not engaged in substantial gainful activity since September 1, 2020, the alleged onset date.

3. The claimant has the following severe impairments: cerebellar ataxia and neuropathy, alcoholic.

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can never climb ladders, ropes, and scaffolds; never balance (as defined by the Selected Characteristics of Occupation (SCO)); occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; and frequently handle, finger, and feel with the bilateral upper extremities; and he should never be exposed to: environmental hazards, such as high exposed places, and moving mechanical parts, or open bodies of water.

   * * *

6. The claimant is unable to perform any past relevant work.

   * * *

7. The claimant was born [in] 1980, and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and

3

residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2020, through the date of this decision.

AR 17-26 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request.  AR 1-6.  He now seeks judicial review under 42 U.S.C. § 405(g).

**Analysis**

Plaintiff claims that the ALJ erred in two ways.  First, he argues that the ALJ failed to provide sufficient reasoning to discount certain portions of his symptom testimony.  ECF No. 10 at 10-20.  Second, plaintiff argues that the ALJ failed to properly evaluate the medical opinions of treating physician Dr. Sami Moshi and consultative examiner Dr. Satish Sharma.  *Id.* at 20-27. The court addresses these arguments in turn.

**I.      Plaintiff's Testimony**

In the Ninth Circuit, courts follow a "two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id*. (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  If the claimant meets this requirement, and there is no evidence of malingering, the ALJ can reject his symptom testimony only by offering clear and convincing reasons for doing so.  *Id.* "This is not an easy requirement to meet: the clear and convincing standard is the most demanding required in Social Security cases."  *Id.*  The ALJ's reasons must also be supported by substantial evidence in the record.  *Thomas*, 278 F.3d at 959.

Plaintiff testified that his ability to balance is "really not good" since "just walking up on a curb, taking one step on a curb is . . . very difficult."  AR 47.  Plaintiff stated that he can "barely feel" from his knees to his toes on both legs, and that he therefore avoids lifting heavy objects or

4

driving a car. AR 49. He also stated that he has pain in his hands, which affects his ability to grasp items, including writing instruments. AR 51-52. In describing his limitations, plaintiff stated that he can lift only two pounds before experiencing discomfort, and he can walk for ten minutes before needing to rest for thirty to forty-five minutes. AR 50-51

In terms of his regular activities, plaintiff stated that he goes grocery shopping, though he uses the shopping cart "almost like a walker," and he can lift a 24-pack of soda into the cart. AR 50. Plaintiff stated that, since his bedroom is upstairs, he does "go up and down the stairs about a dozen times a day," though there are also bad days where he has to "scooch down the stairs."[2] AR 47, 56. He testified that he can walk about eight to ten blocks, though he noted that on a "bad day" he foregoes walking. AR 48. Plaintiff stated that he spends his days between sitting, standing, and lying down. AR 52-53. He testified that he does his own laundry, though he rolls the laundry bag down the stairs and has someone else bring his clothes back upstairs. AR 54. He also stated that while he avoids cooking, he does use the microwave. *Id*.

In assessing plaintiff's residual functional capacity ("RFC"), the ALJ accounted for many of the limitations described in plaintiff's testimony. However, the ALJ also concluded that plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 20. The court addresses these two sources—medical evidence and other evidence—in turn.

First, regarding the medical evidence, the ALJ noted that Dr. Moshi's exam revealed that plaintiff has only slightly decreased strength to his bilateral plantar flexion and dorsiflexion, full strength in his upper and lower limbs with no pronator drift, and the ability to sit unsupported and stand without titubation or postural instability. *See* AR 21, 363-64. Additionally, as the ALJ noted, Dr. Moshi described: (a) plaintiff's brain MRI as showing only "mild generalized brain atrophy probably more than expected for his age"; (b) plaintiff's cervical and lumbar spine MRIs as negative for significant spinal stenosis or central nervous system (CNS) pathology; and

---

[2] Plaintiff stated that a "good week" will have "two bad days" and a "bad week" will have "at least four bad days." AR 56-57.

(c) plaintiff's nerve condition test as not showing "evidence of significant peripheral neuropathy." *See* AR 21, 364. Moreover, the ALJ noted that, at plaintiff's appointment with Dr. Sharma, plaintiff was able "to transfer onto the exam table without assistance," "ambulate without assistive devices," and had 5/5 motor strength throughout his body. *See* AR 21-22, 418, 420. Lastly, the ALJ observed that plaintiff's notes from physical therapy documented his improved balance and a reduction in tenderness. *See* AR 22, 484.

The ALJ properly concluded that plaintiff's testimony about the severity of his limitations was not supported by his medical records. *See Morgan v. Commissioner*, 169 F.3d 595, 600 (9th Cir. 1999) (holding that inconsistencies or a lack of support from medical records is a proper basis for discounting a claimant's subjective testimony). Plaintiff argues that the ALJ did not give "meaningful analysis" to some aspects of Dr. Sharma's report, including the findings that plaintiff "had an antalgic, wobbly and unsteady gait[;] could not tandem walk or perform heel-to-shin testing due to imbalance; and had a positive Romberg" test, which measures an individual's balance. ECF No. 10 at 16. Likewise, plaintiff argues that the ALJ did not focus on the fact that Dr. Moshi's clinical findings "were indicative of peripheral neuropathy, including large fiber neuropathy." *Id*. The ALJ did, however, include those findings in his decision. *See* AR 21. The ALJ properly focused on the inconsistencies between the findings set forth above and plaintiff's testimony, concluding that such inconsistencies constituted a clear and convincing reason to reject plaintiff's testimony regarding the severity of his limitations. *See Morgan*, 169 F.3d at 600.

Second, the ALJ discussed other evidence that was inconsistent with plaintiff's testimony. The ALJ considered the function report that plaintiff completed prior to the hearing. As the ALJ noted, plaintiff reported that he could walk eight to ten blocks in 20 to 25 minutes, he could lift anything weighing less than 50 pounds and lift and carry 15 to 20 pounds, and because his room is upstairs, he "goes up and downstairs about a dozen times a day" using the handrail and wall to balance himself. AR 22, 295-96. Moreover, the ALJ found that, while plaintiff testified that he "has difficulty grasping items held in his hands," he "provided comprehensive and legible

6

information about his functional limitations by completing the [function report] in his own hand with a pen." AR 22.

The ALJ properly concluded that this evidence contradicted plaintiff's testimony about the severity of his limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Plaintiff argues that his testimony was not inconsistent, but he does not account for the apparent inconsistencies between testifying he can only walk for ten minutes and representing on the function report that he walks for 20-25 minutes outside and in grocery stores. *See* ECF No. 10 at 17. Similarly, plaintiff does not adequately address the inconsistency between the representation on the function report that he could lift and carry up to 20 pounds and his testimony that he could only lift and carry a couple of pounds without any problems.[3] *See id*.

Lastly, plaintiff identifies other statements from his testimony that he argues would have supported the ALJ finding that he has a disability. *See id*. at 16-18. However, the court's inquiry "is not whether there is substantial evidence that could support a finding of disability," which seems to be plaintiff's main argument in hopes that the court reweighs the evidence in his favor; rather, the focus is "whether there is substantial evidence to support the Commissioner's actual finding." *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Because there is substantial evidence supporting the ALJ's finding, and the ALJ showed clear and convincing

---

[3] Plaintiff completed the function report in September 2022 and testified in March 2024. *See* AR 34, 297. Plaintiff argues that, instead of contradicting one another, plaintiff's testimony shows that his abilities had deteriorated since completing the function report. ECF No. 10 at 19. However, there is no evidence supporting this assertion. On the contrary, in both his July 2023 and November 2023 appointments with Dr. Moshi—the latter of which is plaintiff's most recent medical appointment with any provider in the record—plaintiff reported that his balance had improved and that physical therapy was "really helping." *See* AR 448, 468.

reasons for rejecting plaintiff's testimony regarding the severity of his limitations, the decision must be upheld.  *See id.*; *Trevizo*, 871 F.3d at 678.

## II.    Medical Opinions

Under the Commissioner's revised regulations, treating physicians' opinions are no longer entitled to the deference that they enjoyed under the prior regulations' "hierarchy of medical opinions." *See Woods v. Kijakazi*, 32 F.4th 785, 787, 792 (9th Cir. 2022).  Consequently, an ALJ is no longer required to provide "specific and legitimate" reasons for rejecting a treating opinion. *Id*. at 792.  Instead, the ALJ must evaluate each medical opinion's persuasiveness based on: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the provider's specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 416.920c(a), (c)(1)-(5).  While all factors must be considered, "supportability" and "consistency" are the primary considerations.  *Id*. § 416.920c(b)(2).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92.  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792.  Now, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.  However, the ALJ is still required to "provide a coherent explanation of her reasoning" so that judicial review may be effective.  *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, *3 (E.D. Cal. Sep. 13, 2022) (quoting *Hardy v. Comm'r Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

Plaintiff challenges the ALJ's assessment of both Dr. Moshi's and Dr. Sharma's opinions. ECF No. 10 at 20-27.  First, plaintiff argues that the ALJ erred in his consideration of Dr. Moshi's opinion.  *Id*. at 20-24.  In 2022 and 2023, plaintiff had several appointments with Dr. Moshi, a licensed neurologist.  *See* AR 360-68, 447-69.  As noted, Dr. Moshi's physical exam revealed slightly decreased strength to plaintiff's bilateral plantar flexion and dorsiflexion, full strength in plaintiff's upper and lower limbs with no pronator drift, and plaintiff's ability to sit unsupported

and stand without titubation or postural instability; plaintiff's brain MRI showed only "mild generalized brain atrophy probably more than expected for [plaintiff's] age"; plaintiff's cervical and lumbar spine MRIs did not show significant spinal stenosis or CNS pathology; and plaintiff's nerve condition test did not show "evidence of significant peripheral neuropathy." AR 363-64. Based on these findings and plaintiff's positive Romberg test, Dr. Moshi diagnosed plaintiff with "cerebellar ataxia due to alcoholism" and "neuropathy, alcoholic." AR 364-65. Dr. Moshi then completed a medical assessment in which he opined that: in an eight-hour workday, plaintiff could sit for only three hours and stand for only one hour; plaintiff would need four unscheduled breaks, each lasting thirty minutes; and plaintiff would need to miss work once or twice a month. AR 382-83.

The ALJ concluded that Dr. Moshi's opinion was not persuasive, finding that Dr. Moshi's findings—as set forth above—did not support those assessed limitations. AR 23. Moreover, the ALJ found that Dr. Moshi's opinion was inconsistent with Dr. Sharma's aforementioned observation that plaintiff transferred onto the exam table without assistance, ambulated without an assistive device, and had 5/5 motor strength throughout his body. AR 21-22, 418, 420.

Plaintiff argues that Dr. Moshi's findings—specifically, that plaintiff had mild generalized brain atrophy and a wide-based, ataxic gait—supported his opinion. ECF No. 10 at 22. But plaintiff does not explain how those findings support an opinion that, in an eight-hour workday, plaintiff can sit for only three hours, can stand for only one hour, and needs four thirty-minute breaks. *See id*. Accordingly, the ALJ properly omitted these limitations from plaintiff's RFC. *See Thomas*, 278 F.3d at 954 (holding that courts may not disrupt an ALJ's logical interpretation of the evidence); *Marci v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence.").

Plaintiff also contends that Dr. Moshi's opinion was consistent with Dr. Sharma's other findings and physical therapy records. ECF No. 10 at 23-24. However, plaintiff does not identify any evidence that is consistent with Dr. Moshi's opinion. Instead, he generally summarizes medical records without explaining what evidence supports his RFC being limited to sitting for only three hours, standing for only one hour, needing four thirty-minute breaks per workday, and

missing work once or twice a month. *See id*. Accordingly, the ALJ did not err in excluding Dr. Moshi's opinion from plaintiff's RFC.[4]

Second, plaintiff argues that the ALJ erred in his consideration of Dr. Sharma's opinion. *Id*. at 24-27. In August 2023, plaintiff underwent a consultative examination with Dr. Sharma. AR 417-22. As previously noted, Dr. Sharma found that plaintiff was able "to transfer onto the exam table without assistance," "ambulate without assistive devices," and had 5/5 motor strength throughout his body. AR 418, 420. Dr. Sharma also noted that plaintiff was unable to tandem walk because of his "wobbly/unsteady gait," could not perform a heel to shin test "due to balance," and had a positive Romberg test. AR 419. Based on these findings, Dr. Sharma opined that plaintiff could stand/walk for only up to two hours per day, could sit up to six hours per day, and could never engage in postural activities (i.e., climb, balance, bend, kneel, crouch, or crawl). AR 421.

The ALJ concluded that Dr. Sharma's opinion was partially persuasive, finding that some of Dr. Sharma's findings, such as full motor strength throughout plaintiff's body, were consistent with other medical evidence. AR 22-23. The ALJ, however, found that no evidence—including Dr. Sharma's examination—supported the finding that plaintiff could never engage in postural activities. *Id*.

Plaintiff argues that Dr. Sharma's exam supported his opinion that plaintiff could stand/walk for only two hours. ECF No. 10 at 25-26. The ALJ's decision, however, effectively accounted for this limitation, since plaintiff's RFC is limited to sedentary work, which is defined as requiring walking and standing "occasionally." *See* 20 C.F.R. § 416.967(a). As plaintiff acknowledges, Social Security regulations provide that "'[o]ccasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the

---

[4] Plaintiff also argues that the ALJ did not properly consider Dr. Moshi's specialty as a neurologist. ECF No. 10 at 22-23. However, as plaintiff acknowledges, the ALJ was not required to discuss Dr. Moshi's specialty; instead, the regulations provide that the ALJ consider this factor and that a specialist's opinion "may be more persuasive" than a non-specialist's opinion. *See* 20 C.F.R. § 416.920c(c)(4); ECF No. 10 at 22. Because there is no evidence that the ALJ did not consider this factor, plaintiff's argument is unavailing.

10

sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *See* ECF No. 10 at 6 n.1 (quoting Social Security Ruling 83-10).  Accordingly, plaintiff's RFC accounts for Dr. Sharma's opinion that plaintiff can stand/walk only up to two hours per day.

Notably, plaintiff does not identify any evidence supporting Dr. Sharma's opinion that plaintiff could never engage in postural activities.  *See id*. at 25-27.  The ALJ properly found that Dr. Sharma's opinion was not supported by the examination findings and was inconsistent with other evidence, including the opinions of state agency medical consultants Dr. Shih and Dr. Hunter, who both found that plaintiff could climb occasionally, bend at least frequently, kneel occasionally, crouch occasionally, and crawl frequently.  *See* AR 23, 75, 104.  Accordingly, the ALJ did not err in excluding Dr. Sharma's opinion regarding postural activities from plaintiff's RFC.

Accordingly, it is hereby ORDERED that:

1.  Plaintiff's motion for summary judgment, ECF No. 10, is DENIED.

2.  The Commissioner's cross-motion for summary judgment, ECF No. 12, is GRANTED.

3.  The Clerk of Court is directed to enter judgment in the Commissioner's favor and close this case.

IT IS SO ORDERED.

Dated:    March 30, 2026                              _____
                                                    JEREMY D. PETERSON
                                                    UNITED STATES MAGISTRATE JUDGE

11